Curtis *v.* Leavitt.

---

CURTIS and others *vs.* LEAVITT, receiver, &c. and others.

Where a bill is filed for the purpose of establishing the validity of an assignment to the complainants, in trust; and the defendant, in consequence of the particular frame of the bill, has entered into a stipulation for the appointment of a receiver of the fund in controversy, and to abandon his defence in other suits instituted by the same complainants, and the court has acted upon such stipulation, and appointed a receiver accordingly; the complainants will not be permitted to amend by changing the entire character of their bill.

The court will not, upon a special application, allow an amendment of the complainant's bill, where the effect of the amendment will be to make the bill so defective, either in form or substance, that a demurrer thereto can be sustained.

A bill in chancery to protect property until some other person shall file a bill, in the same court, to settle the right to such property, cannot be sustained.

*It seems,* the court of chancery will not entertain a bill to protect property pending a litigation in the probate court, as to the validity of a will or the right of administration; where the probate court itself can fully provide for the protection of the property of the decedent, pending the litigation, by granting letters *ad colligendum.*

THIS was an appeal, by the complainants, from a decision of the vice chancellor of the first circuit, denying their application to amend their bill. The North American Trust and Banking Company had made two several assignments, to the complainants, of bonds and mortgages; the first assignment embracing about a million of dollars, and the second about half a million of dollars, in such securities, in trust to secure the payment of certain bonds of the banking company; which assignments, the receiver of the company, who was subsequently appointed to

Curtis *v.* Leavitt.

close up its concerns, and many of the mortgagors in such bonds and mortgages, insisted were unauthorized and illegal. In a great number of suits which had been commenced for the foreclosure of such mortgages, by the complainants as such trustees, and in which suits Leavitt, as the receiver of the banking company, was made a defendant, he insisted upon the invalidity of the assignments, as a defence to such suits. Many of the mortgagors, and other defendants in such suits, also by their answers contested the right, of the complainants to the bonds and mortgages; under the respective assignments thereof from the banking company. Leavitt, the receiver, had also given notice to the complainants of his intention to file a bill against them, for the purpose of testing the validity of the assignments, and of having them set aside as unauthorized and illegal. The complainants, therefore, to save the expense of litigating the same question in each of the suits which they might be obliged to bring, for the foreclosure of the several bonds and mortgages, and to prevent the delay and expense of allowing the mortgagors, and those who had succeeded to their rights in the premises upon which the respective mortgages were liens, to litigate this question in the foreclosure suits which might thereafter be brought upon such mortgages, filed their bill in this cause, against the receiver of the North American Trust and Banking Company, and against the holders of the bonds for the security of which such assignments were made. The bill stated all these matters at length, and all the various facts and circumstances upon which it was alleged that the several assignments were made; charging, among other things, that it was necessary to have the bonds and mortgages which had become due and payable foreclosed without delay; on account of the insufficiency of the mortgaged premises, and the insolvency of many of the mortgagors. And the complainants prayed, in their bill, that the several assignments, declarations of trust, bonds or obligations, and all the transactions detailed in the bill, might, by a decree of this court, be adjudged and declared to be valid and effectual for all and every of the objects and intents therein expressed; that the claim of the complainants to the bonds and mortgages as-

signed to them, and to the proceeds thereof, might be decreed to
be valid and effectual against Leavitt, as the receiver of the
banking company, and all persons claiming under him; and
that such receiver might be decreed to execute to the complain-
ants such releases, and other conveyances, as should be necessary
to give them the full possession and control of all the trust funds.
They further prayed that particular directions might be given
to them, by the court, for the discharge of their duties as trustees;
and that it might be decreed and adjudged that they were enti-
tled to the salaries and compensation specified in the assignment,
or to some other reasonable allowance for their services as such
trustees, and also to all necessary costs, disbursements and ex-
penses.     The complainants also prayed that Leavitt the receiver
might be enjoined and restrained from intermeddling with the
bonds and mortgages assigned to them as such trustees, and from
interfering with them in the discharge of their duties, or from re-
sisting the foreclosure of the mortgages by them, or the collection
of the moneys due thereon, or from doing any other act to hinder,
delay, or prejudice them in the premises; that *in the mean time*
a proper person might be appointed by this court, as a special re-
ceiver, *to foreclose and collect the bonds and mortgages,* and to
hold the proceeds subject to the final decree of this court, or other
termination of this suit; and that Leavitt, the receiver of the bank-
ing company, might be ordered and directed to execute, to such
special receiver, an assignment of all his interest and claim in and
to the bonds and mortgages which were then in the process of
foreclosure, or which it might be necessary to foreclose and collect;
the complainants at the same time to make an assignment, to such
special receiver, of their interests in such bonds and mortgages.
They further prayed that Leavitt, the receiver of the banking
company, might be decreed to pay to the complainants their costs,
out of the funds in his hands as such receiver; and that they
might have such further relief, or that they might have such other
relief as might be agreeable to equity.

The subpœna in this suit was served upon the defendant
Leavitt on the first of October, 1842.   He immediately appeared
in the cause; and soon after he received a copy of the com-

plainants' bill, and a notice of an order to answer the same. An application for the appointment of a special receiver in this cause was thereupon made, to the chancellor; who referred such application to the vice chancellor of the first circuit, to hear and decide the same. While such application was pending and undetermined, the solicitors for the several parties in the suit entered into a stipulation, or agreement, for the appointment of such receiver; upon certain conditions. Pursuant to that stipulation, or agreement, an order was made by the vice chancellor, on the 16th of December, 1842, for the appointment of J. J. Palmer, as special receiver of all the bonds and mortgages which had theretofore been assigned, by the banking company, to the complainants as trustees, by the two agreements and assignments mentioned in their bill in this cause, and therein described as the million and the first half million trusts, and which had not been collected by the trustees; excepting the bonds and mortgages upon which the complainants had commenced foreclosure suits but had not obtained decrees therein, but including the present possession of all the bonds and mortgages and the right to control the proceeds of the same; and also excepting a bond and mortgage, given by J. Miller, in the order particularly described. The order also directed the complainants, and Leavitt as the receiver of the banking company, to assign, to the special receiver, all their interest in the bonds and mortgages, and in the decrees which might have been obtained on any of them. The order also contained full powers to the special receiver to enforce the collection of the bonds and mortgages, and to hold the proceeds thereof for the benefit of such of the parties as might appear to be entitled to the same. The order further declared that all the powers thereby conferred upon the special receiver were to be subject to the ultimate decision of the suit or suits, then pending *against*, or to be instituted *by* Leavitt, as receiver of the banking company, for the purpose of determining the validity of the assignments to the complainants, and other matters between Leavitt as such receiver and the complainants as trustees, and the other parties interested in said trusts; and subject to the further order of the court of

chancery. The order contained various other provisions for the recovery and preservation of the fund in controversy. It also contained the following clauses: " *And it is further ordered,* that in case the said complainants shall at any time think proper to amend or dismiss the bill filed by them in this cause, they shall have the same right to do so as if this order had not been made; *but no amendment to be made by them in the said bill shall affect the appointment, authority, or powers of the said special receiver under this order.* And in case they shall dismiss their said bill, the necessary order or orders, for continuing the authority or powers of the said special receiver, shall be first entered in the suit or suits to be instituted by the said David Leavitt, as such receiver, as hereinafter provided. *And it is further ordered,* that the said David Leavitt, as such receiver, shall, if he thinks proper, file his answer to the bill of complaint in this cause; and shall also file such cross-bill or bills, and such original bill or bills as he may be advised, for the purpose of determining the debts, trusts, and other matters in controversy between him, as such receiver, and the complainants, as such trustees, and the other parties interested in the said trusts; and that all parties in such suit or suits do proceed with all reasonable diligence to put the same at issue, and to complete the proofs therein, at the earliest day possible; and so as to avoid, as far as may be, all collateral questions not affecting the merits, and to obtain a decision upon the substantial right of the parties without unnecessary expense or delay."

On the 12th of February, 1843, the complainants gave notice of an application for leave to amend their bill, by striking out and amending the prayer thereof, so that the only prayer of the amended bill, immediately after the usual prayer for an answer from the defendants therein, would be as follows: And that the said David Leavitt may be enjoined and restrained from intermeddling with the bonds and mortgages and property assigned as aforesaid to your orators as such trustees, and from hindering, delaying, or interfering with the special receiver, to be appointed as hereafter mentioned, in the discharge of his duties as such special receiver; and from resisting or in any way inter-

fering with him in the foreclosure of the said bonds and mortgages, or in the collection of the moneys due thereon, or on any of the securities assigned as aforesaid to your orators; and from doing any other act to the hindrance, delay, or prejudice of your orators in the premises; and that in the meantime a proper person may be appointed, under the direction of this court, as special receiver and charged with the duties hereinafter specified; and that the said David Leavitt, as receiver as aforesaid, may be ordered to make and execute, under the direction of one of the masters of this court, proper instruments of assignment, to such special receiver, of all his right, title, interest and claim in and to all and singular such bonds and mortgages, so as aforesaid assigned to your orators, as are now in the process of foreclosure, or as it may be necessary to foreclose and collect; your orators at the same time making assignments to such special receiver, of their interests in such bonds and mortgages so to be assigned by the said David Leavitt as such receiver; and that the said special receiver may be vested with the proper and necessary powers to foreclose and collect such bonds and mortgages, and to hold the proceeds subject to the final decree of this court, or other termination of this suit; or that such special receivership may be constituted in such other manner, and with such other or further powers, as to the chancellor may seem proper. And that your orators may have such further relief, in respect only to the appointment and control of such special receiver, and to the property and funds committed to his care, or such other relief as may be agreeable to equity; this bill of complaint being filed only for the collection of the said assigned property, and the prosecution of suits for the recovery thereof, for the benefit of the parties interested therein, by means of the special receiver, until the litigation as to the rights of your orators and the said David Leavitt, as such receiver, in regard thereto, shall be settled and determined in the suit which the said David Leavitt may institute against your orators as threatened by him; or until the rights of your orators and of the said David Leavitt shall be otherwise legally determined.

Before the hearing of this application to amend, the defendant

Leavitt had completed and put in his answer to the complainants' bill, and had also filed a cross-bill to set aside the assignments, to the complainants in this suit, of the several bonds and mortgages constituting the million and first half million trusts, as unauthorized and invalid; which answer and cross-bill were very voluminous, and had been in a course of preparation long before notice of the application to amend was given. The vice chancellor, to whom the application to amend was referred, denied such application, with costs.

*W. C. Noyes & B. F. Butler*, for the appellants.

*G. N. Titus & M. T. Reynolds*, for the respondent.

THE CHANCELLOR. The vice chancellor was clearly right in refusing to allow the amendments asked for in this case. At the time the original bill was filed, the complainants were aware that Leavitt, the receiver, intended to file a bill, to set aside the assignments to the complainants as illegal and unauthorized. And if they supposed they had the right to file an original bill in this court, for the mere purpose of preserving the fund in controversy until he, or some other person, should think proper to commence a suit against them, in the same court, to test the validity of the assignments to them, they should have framed their bill accordingly, in the first instance; so as to give the defendant an opportunity to oppose the appointment of such a receiver, if the complainants were not entitled thereto upon such a bill, or if the rights of the complainants were not truly stated therein. Here the defendant has consented to the application for a receiver, and to abandon his right to set up his defence in the several foreclosure suits, upon a bill which was framed in such a manner as to enable him to set up the same defences to the claim of the complainants, and with the like effect; and which afforded proper grounds for filing the cross-bill, which has been filed by him in this case, to obtain a decree setting aside those assignments in case the complainants should not succeed in maintaining their validity. It is true, the order and stipulation reserved

to the complainant the same right to amend his bill, or to dismiss the same, as if the order and stipulation had not been made. But the same order and stipulation reserved the right to the defendant Leavitt to put in his answer to that bill; and to file a cross-bill, if he should be advised to do so, for the purpose of determining the validity of the assignments, and other matters in controversy between him and the complainants and their cestuis que trust. The filing of a cross-bill, therefore, was perfectly proper, even if it was not absolutely necessary, to settle these matters in controversy; and to bring the litigation to an end within some reasonable time. For, under the reservation contained in the stipulation and order, the complainants, at any time before the hearing of the cause upon pleadings and proofs, might dismiss their bill, if the testimony in the case was not satisfactory to them, upon payment of costs; and might thus compel the defendant Leavitt to litigate the same matters over again in a new suit instituted by him. The intention of Leavitt to file such a cross-bill as was contemplated in the stipulation and order, therefore, furnished no good grounds for allowing the complainants to make an amendment, in this injunction bill, which would probably destroy the foundation of the defendant's bill, as a cross-bill. For the litigation upon the original bill in this cause, and upon the defendant's cross-bill, could proceed *pari passu*, and could be decided upon the same evidence, under the order of the court.

The reservation of the same right to amend as if the stipulation and order had not been made, gave to the complainants no greater or other rights to amend than they would have had, at the same time and in the same stage of the cause, if that stipulation had not been executed. What, then, were the rights of the complainants to amend at the time this application was made? They had several months before that filed their bill in this cause, under oath, to establish the validity of the assignments creating the million and the half million trusts; charging the defendant Leavitt with making a false and inequitable claim to the assigned property, and with subjecting them to great delay and expense, as well as endangering the trust fund, by resisting

their claims in numerous suits which they had been obliged to institute to foreclose the assigned bonds and mortgages; in which suits they had made him a defendant. And in their bill they had asked to have their rights settled in this suit, and to have the trusts declared valid, and that a receiver of a considerable portion of the property should be appointed; and for an injunction against Leavitt, restraining him from interfering with the trust property, or resisting their claims in the foreclosure suits. The bill was also filed with full knowledge that the counsel of the defendant Leavitt had been a long time engaged in preparing an original bill, to be filed by Leavitt, to establish his claim to the property embraced in the million trust, and to set aside the assignment thereof, to the complainants, as illegal and void. The filing of this bill, therefore, rendered it proper, if not absolutely necessary, that the defendant should change his original bill into a cross-bill, not only to set aside the million trust, but also to set aside the first half million trust; both of which trusts were embraced in the complainants' injunction bill in this cause. And after the defendant Leavitt and his counsel had been for a long time engaged in preparing an answer in this suit, and a cross-bill, notice of this application was given, to amend the bill in such a manner as necessarily to change the whole structure of the defendant's cross-bill, if not entirely to destroy its foundation as a cross-bill. Under such circumstances, even if the amendment now asked for was shown to be material to the attainment of justice, the application should only be granted, upon the terms of paying all the costs which the defendant Leavitt had incurred in preparing his cross-bill, and his answer in this suit, with the costs of the proceedings thereon down to the time of the hearing of the motion before the vice chancellor, at least; if not to the time of the final decision upon that application. For, the defendant was not bound to suspend his proceedings, upon a mere notice of such an application to amend; after he had entered into a stipulation to proceed, with all reasonable diligence, to put the matters in controversy in readiness for hearing by the earliest day possible.

I can see no good reason, however, for granting these amend-

ments upon any terms. For instead of diminishing expense, and expediting the decision of the questions in controversy between these parties, the amendments proposed, if allowed, would probably produce both delay and expense. The complainants may indeed dismiss their bill, upon payment of costs; after obtaining an order, upon the cross-bill of the defendant Leavitt, continuing the authority of the special receiver, according to the terms of the stipulation. But that dismissal would not, probably, destroy the foundation of the cross-bill, so as to render the filing of a new original bill by Leavitt necessary; as the amendments asked for in this case unquestionably would do, if granted; the effect of those amendments being to make this a mere bill to preserve the trust fund until some person thinks proper to file a bill, in this court, to ascertain to whom it rightfully belongs.

Again; the court will not grant an amendment, when the effect of such amendment will be to render the complainants' bill so defective, either in form or substance, that a demurrer thereto could be sustained. It is not necessary to inquire whether the amendments proposed are so framed as to meet the object the counsel for the complainants had in view when those amendments were asked for. That object appears to be to deprive the defendant Leavitt of the power of litigating any question whatever in this suit, and to leave the fund in the hands of the special receiver forever, unless some one of the parties to this suit should think proper to institute another and independent suit, in this court, to determine who is entitled to the fund; and that in the meantime the defendant Leavitt may be restrained from making any defence whatever in the foreclosure suits, to which the complainants had made him a party. That, I believe, is an experiment which has never before been tried in this court. And I am unable to discover any principle upon which it can be sustained. This court, it is true, allows a bill to be filed here for the preservation of property pending a suit in the ecclesiastical court, as to the validity of a will, or during the continuance of a suit there in the case of a contested administration. But the original ground of such jurisdiction was that the ecclesiastical court had the exclusive power to determine

the question as to who had the right to administer the estate of the decedent; and that until that question was determined there was no person vested with any power, or authority, to sue for and recover the debts or other property of the decedent, so as to prevent its being lost by insolvency or otherwise. For until the decision of the court of king's bench in *Walker* v. *Woollaston*, (2 *Peer Wms. Rep.* 276,) it was supposed that a grant of letters *ad colligendum*, or a limited administration, was not sufficient to authorize the special administrator to bring an action to recover the estate of the decedent. Since that decision it appears to have been settled, in England, that the court of chancery will not appoint a receiver to protect the property pending the litigation in the ecclesiastical court, without a suggestion that the property is in danger and cannot be secured by means of an administration *pendente lite.* (*Knight* v. *Duplessis*, 1 *Ves. sen.* 324. *Richards* v. *Chave*, 12 *Ves.* 461. *Jones* v. *Goodrich*, 10 *Sim. Sep.* 327.) In the case referred to by the counsel for the appellant, on the argument, ( *Wood* v. *Hitchings*, 2 *Beav. Rep.* 289,) the administration pendente lite had terminated, by the decision of the prerogative court; and that court being inhibited from proceeding pending the appeal to the privy council, there was no person authorized to collect the property; except by the aid of the court of chancery. And in *De Fencheres* v. *Dawes*, (5 *Beav. Rep.* 110; 6 *Lond. Jur.* 594,) the question was not raised, by the demurrer, as to the right of the complainant to file the bill for a receiver pending the litigation in the ecclesiastical court. It is probable, therefore, that some sufficient reason was stated in the bill, in that case, for the interference of the court; or that the defendant was willing to allow that part of the bill to stand, for the purpose of preserving the property. The demurrer, to the residue of the bill, was allowed upon the ground that such bill was prematurely filed.

In this court, the necessity of having a discovery from the defendant, or of having an injunction or receiver to protect property from waste or destruction pending a suit, has sometimes induced the court to retain the cause here, and to give relief to the complainant in the same suit; to prevent a double litigation of

the same matter by another suit in a court of law. But I am not aware of any case, in which this court had original jurisdiction over the subject matter of the litigation, as well as the right to give special relief, by the granting of an injunction, or by the appointment of a receiver of the property pending the litigation in the same court, where the complainant has been permitted to file a bill for the special relief merely; and so to frame his prayer that it would be improper for the court to settle the matter.in controversy between the parties, without the commencement of an entirely distinct and independent suit in the same court.

Here the bill upon its face professes to make out a case not only entitling the complainants to an order for the temporary relief, by an injunction and receiver pending the litigation, but also to a final decree settling the rights of the parties to the whole matter in controversy between them; provided a proper prayer for relief, or even the general prayer for relief, is left in the bill. Upon full consideration of the subject, I am satisfied that if the original bill had been framed upon the principle that is proposed by these amendments, the defendant Leavitt might have demurred to it, for want of equity; and that no receiver could have been properly appointed under it. The complainants cannot, therefore, after they have obtained the temporary relief sought for, destroy their whole bill, under pretence of amending it; and where they have no right to amend except upon application to the court, as a favor. And if they now wish to get rid of this suit, and to compel the defendant Leavitt to hold the affirmative upon the questions in litigation between them, they must exercise the right, reserved to them by the stipulation and order, to apply for the necessary order in the cross-suit of the defendant Leavitt for continuing the receivership, and for leave to dismiss their own bill, upon payment of costs, as directed by the statute in such cases. This will leave to the complainant in the cross-bill the same right, to apply for liberty to dismiss his cross-bill, and to leave the fund in the hands of the special receiver until one party or the other chooses to assume the responsibility of filing a new original bill; if there is indeed any advantage in being a defendant instead of a complainant,

in this litigation, which is at least doubtful. Probably the better course for both parties, is to put the matters both of the original and cross-suits in a situation to be determined without delay, and proceed to a hearing thereon as they now stand; so that neither party will be in a situation to withdraw from the litigation, and thus prevent a final decision of the matters in controversy between them, without the consent of the other.

The order denying the application to amend was not erroneous; and it must be affirmed with costs.